1  LIONEL Z. GLANCY (#134180)
2  ROBERT V. PRONGAY (#270796)
   LESLEY F. PORTNOY (#304851)
3  CHARLES LINEHAN (#307439)
   PAVITHRA RAJESH (#323055)
4  GLANCY PRONGAY & MURRAY LLP
5  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
6  Telephone:(310) 201-9150
7  Facsimile: (310) 201-9160
   Email:    info@glancylaw.com
8
9  *Attorneys for Plaintiff*

10
11            **UNITED STATES DISTRICT COURT**
12            **SOUTHERN DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| MAX MORRIS HARARI, Individually and on Behalf of All Others Similarly Situated, | Case No. **'19 CV 0958 JM   LL** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| PRICESMART, INC., JOSE LUIS LAPARTE, JOHN M. HEFFNER, and MAARTEN O. JAGER, | **JURY TRIAL DEMANDED** |
| Defendant. | |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

CLASS ACTION COMPLAINT

1      Plaintiff Max Morris Harari ("Plaintiff"), individually and on behalf of all
2  others similarly situated, by and through his attorneys, alleges the following upon
3  information and belief, except as to those allegations concerning Plaintiff, which are
4  alleged upon personal knowledge. Plaintiff's information and belief is based upon,
5  among other things, his counsel's investigation, which includes without limitation:
6  (a) review and analysis of regulatory filings made by PriceSmart, Inc. ("PriceSmart"
7  or the "Company") with the United States ("U.S.") Securities and Exchange
8  Commission ("SEC"); (b) review and analysis of press releases and media reports
9  issued by and disseminated by PriceSmart; and (c) review of other publicly available
10  information concerning PriceSmart.

11              **NATURE OF THE ACTION AND OVERVIEW**

12      1.      This is a class action on behalf of persons and entities that purchased or
13  otherwise acquired PriceSmart securities between October 26, 2017 and October 25,
14  2018, inclusive (the "Class Period"), seeking to pursue remedies under the
15  Securities Exchange Act of 1934 (the "Exchange Act").

16      2.      PriceSmart owns and operates membership-shopping warehouse clubs
17  in Central America, the Caribbean, and Colombia.

18      3.      On October 25, 2018, the Company disclosed poor operating results for
19  the fourth quarter and year ended August 31, 2018. The Company also announced
20  that its Chief Executive Officer had resigned, and also disclosed that certain
21  financial statements would be restated to correct a balance sheet misclassification of
22  certain assets.

23      4.      On this news, the Company's share price fell $12.41, or more than
24  15%, to close at $69.16 per share on October 26, 2018, on unusually heavy trading
25  volume.

26      5.      Throughout the Class Period, Defendants made materially false and/or
27  misleading statements, as well as failed to disclose material adverse facts about the
28  Company's business, operations, and prospects. Specifically, Defendants failed to

CLASS ACTION COMPLAINT
1

disclose to investors: (1) that the Company's omni-channel business strategy had failed to reach key operating goals; (2) that the Company's South America distribution strategy had failed to realize key cost saving goals; (3) that the Company had invested Trinidad and Tobago dollars into certificates of deposits with financial institutions; (4) that these investments had been improperly classified as cash and cash equivalents; (5) that the relevant corrections would materially impact financial statements; (6) that there was a material weakness in the Company's internal controls over financial reporting; (7) that increasing competition negatively impacted the Company's revenue and profitability; and (8) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this

Judicial District.  In addition, the Company's principal executive offices are located in this district.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff Max Morris Harari, as set forth in the accompanying certification, incorporated by reference herein, purchased PriceSmart securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant PriceSmart is incorporated under the laws of Delaware with its principal executive offices located in San Diego, California.   PriceSmart's common stock trades on the NASDAQ exchange under the symbol "PSMT."

13.    Defendant Jose Luis Laparte ("Laparte") was the President, Chief Executive Officer, and a Director of the Company at all relevant times.

14.    Defendant John M. Heffner ("Heffner") was the Chief Financial Officer of the Company from 2004 to April 24, 2018.

15.    Defendant Maarten O. Jager ("Jager") has been the CFO of the Company since April 24, 2018.

16.    Defendants Laparte, Heffner, and Jager, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and

1  opportunity to prevent their issuance or cause them to be corrected.  Because of their
2  positions and access to material non-public information available to them, the
3  Individual Defendants knew that the adverse facts specified herein had not been
4  disclosed to, and were being concealed from, the public, and that the positive
5  representations which were being made were then materially false and/or
6  misleading.  The Individual Defendants are liable for the false statements pleaded
7  herein.

## SUBSTANTIVE ALLEGATIONS

### Background

10    17.    PriceSmart owns and operates membership-shopping warehouse clubs
11  in Central America, the Caribbean, and Colombia.

### Materially False and Misleading
### Statements Issued During the Class Period

14    18.    The Class Period begins on October 26, 2017. On that day, the
15  Company filed its annual report for the period ended August 31, 2017 (the "2017
16  10-K"). Therein, the Company reported $3.0 billion revenue and $90.7 million net
17  income.

18    19.    The 2017 10-K also discussed that the Company experienced a lack of
19  availability of U.S. dollars in certain markets, including Trinidad. The report stated,
20  in relevant part:

> From time to time we have experienced a lack of availability of U.S.
> dollars in certain markets (U.S. dollar illiquidity). This impedes our
> ability to convert local currencies obtained through warehouse sales
> into U.S. dollars to settle the U.S. dollar liabilities associated with our
> imported products, increasing our foreign exchange exposure to any
> devaluation of the local currency relative to the U.S. dollar. During
> fiscal year 2017 and continuing into fiscal year 2018, we
> experienced this situation in Trinidad ("TT"). We have been and
> continue to work with our banks in Trinidad to source tradable
> currencies (including Euros and Canadian dollars), but until the central
> bank in Trinidad makes more U.S. dollars available,

this illiquidity condition is likely to continue. During part of the first half of fiscal year 2017 we limited shipments of merchandise to Trinidad from our distribution center in Miami to levels that generally aligned with our Trinidad subsidiary's ability to source U.S. dollars to pay for that merchandise. This resulted in a reduced level of shipments, which negatively affected sales in the second quarter, particularly December, although by less than our initial estimate. These actions did not impact the level of merchandise we obtain locally in Trinidad. Starting in the third quarter of fiscal year 2017, we were able to improve our sourcing of tradeable currencies, which, in addition to other steps we took, allowed for a more normalized flow of imported merchandise during the third and fourth fiscal quarters. As of August 31, 2017, our Trinidad subsidiary had net U.S. dollar denominated assets of approximately $4.0 million. However, the illiquidity situation remains in the Trinidad market, and we could face similar issues in sourcing U.S. dollars during the first and second quarters of fiscal year 2018, which may require us to limit shipments from the U.S. to Trinidad in line with our ability to exchange Trinidad dollars for tradeable currencies to manage our exposure to any potential devaluation.

20.    On January 4, 2018, the Company filed its quarterly report on Form 10-Q for the period ended November 30, 2017. Therein, the Company reported $767.1 million revenue, $22.5 million net income, and $129.18 million cash and cash equivalents.

21.    On April 5, 2018, the Company filed its quarterly report on Form 10-Q for the period ended February 28, 2018. Therein, the Company reported $839.6 million revenue, $14.1 million net income, and $152.13 million cash and cash equivalents.

22.    On July 5, 2018, the Company filed its quarterly report on Form 10-Q for the period ended May 31, 2018. Therein, the Company reported $782.2 million revenue, $18.7 million net income, and $141.16 million cash and cash equivalents.

23.    The above statements identified in ¶¶18-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to

investors: (1) that the Company's omni-channel business strategy had failed to reach key operating goals; (2) that the Company's South America distribution strategy had failed to realize key cost saving goals; (3) that the Company had invested Trinidad and Tobago dollars into certificates of deposits with financial institutions; (4) that these investments had been improperly classified as cash and cash equivalents; (5) that the relevant corrections would materially impact financial statements; (6) that there was a material weakness in the Company's internal controls over financial reporting; (7) that increasing competition negatively impacted the Company's revenue and profitability; and (8) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

24.     On October 25, 2018, the Company announced fourth quarter and full year 2018 results. The Company disclosed total revenues of $777.9 million, operating income of $27.2 million, compared to operating income of $30.8 million from the prior year. The Company also announced the resignation of Chief Executive Officer Jose Luis Laparte, and further disclosed that certain financial statements would be restated to correct a balance sheet misclassification of certain assets. The Company stated:

> During the preparation process for the 2018 Annual Report on Form 10-K for PriceSmart, Inc. (the "Company"), a balance sheet misclassification (with no impact on earnings per share, revenue, operating income, net income, cash flow from operations, total assets or total current assets) within current assets was identified involving the Company's presentation of short-term investments as cash and cash equivalents in its previously issued unaudited interim consolidated financial statements for fiscal year 2018; specifically, the three, six and nine month periods ended November 30, 2017, February 28, 2018, May 31, 2018 (collectively, the "Relevant Periods").
>
> In the past, the Company has disclosed a lack of availability of U.S. dollars in certain markets (U.S. dollar illiquidity), which impedes our

ability to convert local currencies obtained through merchandise sales into U.S. dollars to settle the U.S. dollar liabilities associated with our imported products. Also, as we have previously disclosed, during fiscal year 2017 and fiscal year 2018, we experienced this situation in Trinidad. We are working with our banks in Trinidad to source tradeable currencies (including Euros and Canadian dollars), but until the central bank in Trinidad makes more U.S. dollars available, this condition is likely to continue. As part of the actions taken in Trinidad, the Company began investing the excess Trinidad and Tobago (TT) dollars into Certificates of Deposit or similar time-based deposits with financial institutions (referred to collectively herein as "CDs") with terms of three months or less, which the Company correctly presented as Cash and cash equivalents on the consolidated balance sheet. As the Company's balance of TT dollars increased, the Company began investing in CDs with terms of four months and up to twelve months. The Company entered into these four to twelve month CDs to gain priority with the respective financial institutions to make more U.S. dollars available for conversion of TT dollars, as well as in order to take advantage of the higher interest rates on these CDs for cash that was not otherwise needed for operations, capital commitments or debt service*. During the first three quarters of fiscal 2018, the Company presented these four to twelve month CDs as Cash and cash equivalents in its consolidated balance sheet. However, in accordance with generally accepted accounting principles, these four to twelve month CDs should have been presented as Short-term investments. The correction of the misclassification of these investments within the Total current assets section of the consolidated balance sheets also requires the Company to disclose in the Cash provided by (used in) investing activities section of the consolidated statements of cash flows the cash used in Investments in and Settlements of short-term investments.*

On October 24, 2018, the Audit Committee of the Company's Board of Directors met and determined that, as a result of the misclassification described above, the financial statements included in the Company's Quarterly Reports on Form 10-Q for the Relevant Periods should no longer be relied upon. The required restatements will be included in a footnote to the Company's timely filed Form 10-K as of and for the year ended August 31, 2018, which the Company expects to file after the close of the market on October 25, 2018. *The Company also expects to include in this Form 10-K a conclusion that there was a*

***material weakness in internal controls over financial accounting related to this misclassification.*** However, as stated above, there was no impact on earnings per share, revenue, operating income, net income, cash flow from operations, total assets or total current assets as a result of this misclassification.

(Emphases added.)

25.    On this news, the Company's share price fell $12.41, or more than 15%, to close at $69.16 per share on October 26, 2018, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired PriceSmart securities between October 26, 2017 and October 25, 2018, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, PriceSmart's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of PriceSmart common stock were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by PriceSmart or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)   whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of PriceSmart; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

31.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

32.   The market for PriceSmart's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, PriceSmart's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired PriceSmart's securities relying upon the integrity of

1  the market price of the Company's securities and market information relating to
2  PriceSmart, and have been damaged thereby.

3      33.    During the Class Period, Defendants materially misled the investing
4  public, thereby inflating the price of PriceSmart's securities, by publicly issuing
5  false and/or misleading statements and/or omitting to disclose material facts
6  necessary to make Defendants' statements, as set forth herein, not false and/or
7  misleading.  The statements and omissions were materially false and/or misleading
8  because they failed to disclose material adverse information and/or misrepresented
9  the truth about PriceSmart's business, operations, and prospects as alleged herein.

10      34.    At all relevant times, the material misrepresentations and omissions
11  particularized in this Complaint directly or proximately caused or were a substantial
12  contributing cause of the damages sustained by Plaintiff and other members of the
13  Class.  As described herein, during the Class Period, Defendants made or caused to
14  be made a series of materially false and/or misleading statements about PriceSmart's
15  financial well-being and prospects.  These material misstatements and/or omissions
16  had the cause and effect of creating in the market an unrealistically positive
17  assessment of the Company and its financial well-being and prospects, thus causing
18  the Company's securities to be overvalued and artificially inflated at all relevant
19  times.  Defendants' materially false and/or misleading statements during the Class
20  Period resulted in Plaintiff and other members of the Class purchasing the
21  Company's securities at artificially inflated prices, thus causing the damages
22  complained of herein when the truth was revealed.

23  **LOSS CAUSATION**

24      35.    Defendants' wrongful conduct, as alleged herein, directly and
25  proximately caused the economic loss suffered by Plaintiff and the Class.

26      36.    During the Class Period, Plaintiff and the Class purchased PriceSmart's
27  securities at artificially inflated prices and were damaged thereby.  The price of the
28  Company's securities significantly declined when the misrepresentations made to

the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

37.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding PriceSmart, their control over, and/or receipt and/or modification of PriceSmart's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning PriceSmart, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

38.    The market for PriceSmart's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, PriceSmart's securities traded at artificially inflated prices during the Class Period. On June 25, 2018, the Company's share price closed at a Class Period high of $93.83 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of PriceSmart's securities and market information relating to PriceSmart, and have been damaged thereby.

39.    During the Class Period, the artificial inflation of PriceSmart's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the

1   Class.  As described herein, during the Class Period, Defendants made or caused to

2   be made a series of materially false and/or misleading statements about PriceSmart's

3   business, prospects, and operations.  These material misstatements and/or omissions

4   created an unrealistically positive assessment of PriceSmart and its business,

5   operations, and prospects, thus causing the price of the Company's securities to be

6   artificially inflated at all relevant times, and when disclosed, negatively affected the

7   value of the Company shares.  Defendants' materially false and/or misleading

8   statements during the Class Period resulted in Plaintiff and other members of the

9   Class purchasing the Company's securities at such artificially inflated prices, and

10   each of them has been damaged as a result.

11       40.    At all relevant times, the market for PriceSmart's securities was an

12   efficient market for the following reasons, among others:

13       (a)    PriceSmart shares met the requirements for listing, and was listed and

14   actively traded on the NASDAQ, a highly efficient and automated market;

15       (b)    As a regulated issuer, PriceSmart filed periodic public reports with the

16   SEC and/or the NASDAQ;

17       (c)    PriceSmart regularly communicated with public investors via

18   established market communication mechanisms, including through regular

19   dissemination of press releases on the national circuits of major newswire services

20   and through other wide-ranging public disclosures, such as communications with the

21   financial press and other similar reporting services; and/or

22       (d)    PriceSmart was followed by securities analysts employed by brokerage

23   firms who wrote reports about the Company, and these reports were distributed to

24   the sales force and certain customers of their respective brokerage firms.  Each of

25   these reports was publicly available and entered the public marketplace.

26       41.    As a result of the foregoing, the market for PriceSmart's securities

27   promptly digested current information regarding PriceSmart from all publicly

28   available sources and reflected such information in PriceSmart's share price. Under

these circumstances, all purchasers of PriceSmart's securities during the Class Period suffered similar injury through their purchase of PriceSmart's securities at artificially inflated prices and a presumption of reliance applies.

42.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

43.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the

forward-looking statement was authorized or approved by an executive officer of PriceSmart who knew that the statement was false when made.

## FIRST CLAIM FOR RELIEF
### (Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder)
### Against All Defendants

44.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase PriceSmart's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for PriceSmart's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about PriceSmart's financial well-being and prospects, as specified herein.

48.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of PriceSmart's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about PriceSmart and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such

facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing PriceSmart's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of PriceSmart's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired PriceSmart's securities during the Class Period at artificially high prices and were damaged thereby.

52.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that PriceSmart was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their PriceSmart securities, or, if they had acquired

such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM FOR RELIEF**
**(Violation of Section 20(a) of the Exchange Act)**
**<u>Against the Individual Defendants</u>**

55.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.    Individual Defendants acted as controlling persons of PriceSmart within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the

1 power to control or influence the particular transactions giving rise to the securities
2 violations as alleged herein, and exercised the same.

3    58.    As set forth above, PriceSmart and Individual Defendants each violated
4 Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this
5 Complaint. By virtue of their position as controlling persons, Individual Defendants
6 are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate
7 result of Defendants' wrongful conduct, Plaintiff and other members of the Class
8 suffered damages in connection with their purchases of the Company's securities
9 during the Class Period.

10                              **PRAYER FOR RELIEF**

11          WHEREFORE, Plaintiff prays for relief and judgment, as follows:

12    (a)    Determining that this action is a proper class action under Rule 23 of
13 the Federal Rules of Civil Procedure;

14    (b)    Awarding compensatory damages in favor of Plaintiff and the other
15 Class members against all defendants, jointly and severally, for all damages
16 sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial,
17 including interest thereon;

18    (c)    Awarding Plaintiff and the Class their reasonable costs and expenses
19 incurred in this action, including counsel fees and expert fees; and

20    (d)    Such other and further relief as the Court may deem just and proper.

21                           **JURY TRIAL DEMANDED**

22    Plaintiff hereby demands a trial by jury.

23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

1    DATED:  May 22, 2019          GLANCY PRONGAY & MURRAY LLP

2

3                                        By:  *s/ Lesley F. Portnoy*

4                                        Lionel Z. Glancy
                                         Robert V. Prongay
5                                        Lesley F. Portnoy
                                         Charles Linehan
6                                        Pavithra Rajesh
7                                        1925 Century Park East, Suite 2100
                                         Los Angeles, California 90067
8                                        Telephone:  (310) 201-9150
                                         Facsimile:  (310) 201-9160
9                                        Email:  info@glancylaw.com
10

11                                       *Attorneys for Plaintiff Max Morris Harari*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

## PRICESMART, INC. SECURITIES LITIGATION

I, MaxMorris Harari individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.   I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.   I did not purchase the PriceSmart, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.   I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.   My transactions in PriceSmart, Inc. securities during the Class Period set forth in the Complaint are as follows:

     (See attached transactions)

5.   I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.   I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

2/20/2019
_____
Date

DocuSigned by:

*Max Morris Harari*
D1E7DC0551504A1...

MaxMorris Harari

**Max Morris Harari's Transactions in
PriceSmart, Inc. (PSMT)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 07/09/2018 | Bought | 700 | $80.9500 |